**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**ALDER HOLDINGS, LLC**                                                               **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO. 1:24-cv-00181-GHD-RP**

**THE ALARM COMPANY, LLC
dba ALARM SERVICES GROUP, LLC;
THOMAS BRADY; and JOHN DOE
DEFENDANTS 1-30**                                                           **DEFENDANTS**

**VS.**

**ALDER HOLDINGS, LLC; ADAM SCHANZ;
and JOHN DOE DEFENDANTS 1-10**                          **COUNTER-DEFENDANTS**

**JOINT ANSWER AND AFFIRMATIVE DEFENSES
TO THE AMENDED COMPLAINT**

**COME NOW,** Defendants, The Alarm Company, LLC d/b/a Alarm Services Group, LLC

("ASG") and Thomas Brady ("Brady") (collectively referred to as "ASG Defendants"), by and

through their undersigned counsel of record, the law firm of Galloway, Johnson, Tompkins, Burr

& Smith, and files their Answer and Affirmative Defenses to Plaintiff's Amended Complaint [Doc.

34], responding paragraph-by-paragraph, as follows:

**PARTIES**

1. ASG Defendants admits the allegations of Paragraph 1 upon information and belief.

2. ASG Defendants admit ASG is a limited liability company existing under the laws of

Tennessee and may be served with process in accordance with the law. All remaining allegations

are denied.

3. ASG Defendants admit Brady is a resident of the State of Mississippi and may be served

with process in accordance with the law. All remaining allegations are denied.

4. As the allegations of Paragraph 4 are not directed to these Defendants, ASG Defendants deny same in an abundance of caution.

## JURISDICTION AND VENUE

5. Admitted as to jurisdiction only. ASG Defendants deny Plaintiff is entitled to any award for damages.

6. Admitted as to venue only.

## FACTS

7. The allegations of Paragraph 7 are admitted upon information and belief.

8. ASG Defendants admit the allegations of Paragraph 8 to the extent these Defendants are in the business of electronic security and services. Any allegations of Paragraph 8 seeking to imply or impute liability upon ASG Defendants for any acts or omissions are denied.

9. Denied as stated. ASG Defendants admit Brady is a manager and part owner of ASG. Any allegations of Paragraph 9 seeking to imply or impute liability upon ASG Defendants for any acts or omissions are denied.

10. Denied as stated. ASG Defendants admit they receive revenue through servicing their customers for electronic security, which involve the use of contracts. ASG Defendants expressly deny any allegations of Paragraph 10 seeking to imply or impute liability upon ASG Defendants for any acts or omissions.

11. As the allegations of Paragraph 11 are not directed to these Defendants, ASG Defendants deny same in an abundance of caution.

12. As the allegations of Paragraph 12 are not directed to these Defendants, ASG Defendants deny same in an abundance of caution.

13. Denied as stated. ASG Defendants admit their representatives generate new customers using door-to-door sales. Any allegations of Paragraph 13 seeking to imply or impute liability upon ASG Defendants for any acts or omissions are denied.

14. Denied as stated. ASG Defendants admit business can be competitive in the electronic services industry but deny any allegations of Paragraph 14 seeking to imply or impute liability upon ASG Defendants for any acts or omissions.

15. Denied as stated. ASG Defendants admit the allegations of Paragraph 15 to the extent customers in the electronic services industry can transfer their business to other companies but deny any allegations of Paragraph 15 seeking to impute or imply liability upon ASG Defendants for any acts or omissions.

16. Denied as stated. ASG Defendants admit the allegations of Paragraph 16 to the extent customers in the electronic services industry can transfer their business to other companies but deny any allegations of Paragraph 16 seeking to impute or imply liability upon ASG Defendants for any acts or omissions.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

## CAUSES OF ACTION

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

25. ASG Defendants incorporate by reference their prior admissions and denials in Paragraphs 1 through 24 as if stated fully herein.

26. Denied.

27. Denied.

28. Denied.

### INTENTIONAL WRONGDOING/GROSS NEGLIGENCE/NEGLIGENCE

29. ASG Defendants incorporate by reference their prior admissions and denials in Paragraphs 1 through 28 as if stated fully herein.

30. Denied.

31. Denied.

### VIOLATION OF THE LANHAM ACT

32. ASG Defendants incorporate by reference their prior admissions and denials in Paragraphs 1 through 31 as if stated fully herein.

33. ASG Defendants deny the allegations of Paragraph 33 and its subparts.

34. ASG Defendants deny the abstract legal conclusions and opinions of Paragraph 34 and expressly deny Plaintiff is entitled to any award of damages.

35. ASG Defendants deny the abstract legal conclusions and opinions of Paragraph 35 and expressly deny Plaintiff is entitled to any award of damages or judgment.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

## PUNITIVE DAMAGES

40. ASG Defendants incorporate by reference their prior admissions and denials in Paragraphs 1 through 39 as if stated fully herein.

41. Denied.

The allegations and legal conclusions of the unnumbered Paragraph beginning, "WHEREFORE, PREMISES CONSIDERED," are denied, including its subparts (A) through (D). It is expressly denied Plaintiff is entitled to any relief or damages from ASG Defendants.

Now, having answered the allegations of Plaintiff's Amended Complaint, paragraph-by-paragraph, ASG Defendants assert the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim against the ASG Defendants upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff has no cause of action and/or right of action against the ASG Defendants inasmuch as there is no likelihood of confusion, including because the marks are used because the marks are not similar enough to cause confusion.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff has no cause of action and/or right of action against claims the ASG Defendants inasmuch as the claims made in the Amended Complaint are barred, in whole or in part, by the doctrines of fair use, nominative fair use and/or descriptive use.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff has no cause of action and/or right of action against the ASG Defendants because the mark at issue is not afforded protection, as it is descriptive and/or generic.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver, estoppel, and/or laches.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the first sale doctrine.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any infringement, if any, was innocent, and not willful.

## EIGHTH AFFIRMATIVE DEFENSE

The claims made in the Amended Complaint are barred, in whole or in part, on the basis that some or all marks at issue are generic.

## NINTH AFFIRMATIVE DEFENSE

ASG Defendants have not infringed any applicable trademarks under federal or state law and did not engage in any alleged infringing conduct and had no knowledge, direct, constructive, or otherwise, of any alleged infringing conduct.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that such claims are from acts or conditions that complied with the applicable provisions of law.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims against the ASG Defendants are barred because Plaintiff's damages, the existence of which are expressly denied, were not caused by the ASG Defendants.

### TWELFTH AFFIRMATIVE DEFENSE

Without admitting that the Complaint states a claim, there has been no damage in any amount, manner or at all by reason of any act alleged against the ASG Defendants in the Amended Complaint, and therefore, the relief prayed for in the Amended Complaint cannot be granted.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of *in pari delicto.*

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because of a failure to mitigate damages, the existence of which is expressly denied.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the First Amendment to the Constitution of the United States.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Without admitting that the Complaint states a claim, any remedies are limited to the extent that there is sought an overlapping or duplicative recovery pursuant to the various claims for any alleged single wrong.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Any damages Plaintiff may have suffered, the existence of which is hereby expressly denied, are speculative in nature and the result of Plaintiff's own actions and/or omissions.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by reason of other parties' use of any marks at issue.

### TWENTIETH AFFIRMATIVE DEFENSE

The claims made in the Amended Complaint are barred, in whole or in part, because the ASG Defendants are not liable for the acts of others over whom they have no control.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

No punitive or exemplary damages may be awarded arising out of the claims made in the Complaint under the law of the United States.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, as the subject goods are not "counterfeit" as defined under the law.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part against these as Plaintiff would have an adequate remedy at law and therefore are not entitled to seek equitable relief.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part on the basis that some or all marks at issue lack secondary meaning.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Plaintiff cannot show that the ASG Defendants were "passing off" with regard to the products at issue in this matter.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

ASG Defendants asserts all defenses available under Rule 12(b) of the Federal Rules of Civil Procedure, including but not limited to, Rule 12(b)(6).

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

ASG Defendants assert all available defenses or which may become available through discovery, investigation, or otherwise pursuant to Rule 8(c) of the Federal Rules of Civil Procedure.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

ASG Defendants assert the doctrine of fair use.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

ASG Defendants respectfully reserve their right to amend this Answer and Affirmative Defenses to identify and include any other appropriate defense(s) under the circumstances that may be determined through discovery or investigation of the claims alleged in Plaintiff's Amended Complaint.

## JURY TRIAL DEMAND

ASG Defendants demand a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendants, The Alarm Company, LLC d/b/a Alarm Services Group, LLC and Thomas Brady, deny they are liable or indebted to Plaintiff for any damages, fees, or costs alleged, and respectfully requests this Court dismiss this action with costs to Plaintiff. Defendants further request any other relief to which they are entitled, both in law and in equity.

## COUNTERCLAIM

### PARTIES

1. Alarm Services Group is a Tennessee limited liability company with its principal place of business located at 3237 Players Club Pkwy., Memphis, TN 38125.

2. Alder Holdings, LLC is a Utah limited liability company with its principal place of business located at 450 N. 1500 W., Orem, UT 84078.

3. Adam Schanz is a resident of the state of Utah who may be served with process at 60 N. Foxhill Rd., North Salt Lake, UT 84052-3027 or wherever he may be found.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1332.

5. Venue is appropriate in this Court because a substantial part of the acts or occurrences giving rise to the Counterclaims occurred in this Judicial District.

### FACTUAL BACKGROUND

6. Alarm Services Group is engaged in the business of selling and providing, among other things, electronic security, alarm, and home automation services throughout the United States, including counties throughout Mississippi.

7. Alder is also engaged in the business of selling and providing, among other things, electronic security, alarm, and home automation services throughout the United States, including counties throughout Mississippi.

8. Upon information and belief, Defendant Schanz is the sole member of Boerbel Protection, LLC which is the sole member of Alder Holdings, LLC and is directly involved in Alder's business operations, including controlling and developing sales practices, and employee recruiting.

9.      Both ASG and Alder's key revenue sources come from servicing customers who pay a monthly fee for home security, alarm, and automation services. These customers typically enter long-term contracts to pay a monthly fee for goods and services provided to them.

10.      ASG's most valuable assets are the relationships it creates with its customers.

11.      Both ASG and Alder generate sales using door-to-door sales representatives. Such representatives are a primary source of new customers for both companies.

12.      Competition in the home security business can be intense when it comes to finding new customers and recruiting competent sales representatives.

13.      A known practice in the home security industry is to "Slam" a competitor's customer, which means causing an existing customer of services to transfer their business to another provider of similar services. For example, if Alder causes an ASG customer to transfer his or her business to Alder, then Alder has slammed ASG's customer.

14.      At times, competitors engage in illegal and improper conduct to slam their competitors' customers and thereby increase their own sales.

15.      ASG is particularly diligent about ensuring that its salespeople do not engage in prohibited conduct. ASG salespeople typically make sales from a script. Since 2013, ASG has maintained audio recordings of its sales calls to ensure that its employees do not engage in prohibited conduct. The same cannot be said for Alder.

16.      Alder is a known bad actor within the home security industry. It has been the subject of and settled lawsuits for the same behavior it alleges here against ASG. *See ADT LLC v. Alarm Protection LLC*, et al, No. 9:15-cv-80073 (S.D. Fla.); *Bureau of Consumer Fin. Prots., et al. v. Alder Holdings, LLC*, No. 4:20-cv-01445-KGB, (E.D. Ark. August 4, 2021), available at https://www.govinfo.gov/app/details/USCOURTS-ared-4_20-cv-01445/USCOURTS-ared-4_20-

cv-01445-0/context; *State of Georgia v. Alarm Protection Georgia, LLC*, No. 2017CV296616, Fulton County Superior Court (Ga. October 24, 2017), available at https://law.georgia.gov/press-releases/2017-10-26/carr-investigation-stops-deceptive-practices-targeting-elderly. In fact, Alder was the subject of an investigative report by *Inside Edition* detailing Alder's improper sales tactics. How This Security Company May Have Tricked Customers To Switching Alarm Systems, *Inside Edition*, available at https://www.youtube.com/watch?v=hXpYih43kFg (last visited October 3, 2024).

17.    Alder's misconduct even extends to its customers. When an Alder customer is the target of slamming, those customers will often call Alder to cancel their contracts. During those calls, Alder will inform its customers that they "verbally" renewed their contract, all to dissuade the customer from switching providers.

18.    For years, ASG has received complaints from customers who began receiving two bills for home security services. After speaking with these customers, it became apparent Alder had, in fact, misled them by either falsely claiming that Alder had purchased ASG or that ASG had gone out of business. The customers, believing they would no longer be required to pay ASG, entered into contracts with Alder for the same or similar services.

19.    Upon information and belief, Mr. Schanz made such representations to an ASG customer, Dorothy Lathram, in person at her residence.

20.    These actions began to occur so frequently that Thomas Brady called Adam Schanz to express his displeasure at Alder's improper actions.

21.    Alder, upon information and belief, is unhappy that ASG is installing security cameras for Alder customers. These customers already have alarm systems with service provided by Alder. The security cameras installed by ASG exist separately from Alder's systems, and ASG's

provision of these services does not affect Alder's business relationships with its customers. Upon information and belief, many of these Alder customers ultimately cancel their security system contracts with Alder because they view the security camera system installed by ASG as sufficient for their needs.

22. On June 12, 2024, counsel for Alder Holdings, Adam Christian, contacted Thomas Brady and demanded ASG enter a non-compete agreement with Alder, which would result in sales territories in Mississippi being divided up between the two companies. Mr. Brady told Mr. Christian that ASG would not agree to any such restrictions on their ability to sell their services. Upon information and belief, Alder filed its complaint in this matter in retaliation for ASG's refusal to enter a non-compete agreement, and this litigation is being explicitly pursued to force ASG to agree to the terms of the proposed non-compete agreement.

23. ASG's customers primarily finance the installation of their equipment through third-party finance companies with which ASG has relationships. When ASG is subject to slamming and customers stop paying for their financed equipment, these third-party companies incur substantial losses. Alder's repeated illegal slamming of ASG's customers has substantially damaged ASG's relationships with these third-party financing companies, leading at least one of these companies to cease doing business with ASG.

24. Adam Schanz has also personally met with and attempted to hire ASG employees in Mississippi, including one key salesperson, Marvin Anderson.

25. In addition to the specific acts described above, Alder agents have, on numerous occasions, engaged in conduct that gives rise to liability.

26. On or about March 17, 2025, an Alder salesperson, Dan Leighton, entered the home of Sherry Tripplett at 305 Passmore Street, Tutwiler, MS 38963 and represented to Mrs. Tripplett

and her husband that he was affiliated with ASG. Mrs. Tripplett called ASG during this visit and Mr. Leighton spoke directly with ASG employee Collin Brady and represented to him that he worked for Tom Brady and ASG. Mr. Leighton also informed Collin Brady that Adam Schanz personally sent him to the Tripplett residence and other residences to "take back all [their] accounts".

27. On or about December 11, 2024, ASG learned that unknown agent(s) of Alder, John Doe Defendants 1 through 10, represented to Leonard Hudson, an ASG customer in Greenville, MS, that ASG had gone out of business to procure his signature on a new alarm contract. Mr. Hudson, as a result, was left with two separate alarm system contracts, one with ASG and one with Alder, damaging his relationship with ASG.

28. On or about September 30, 2024, ASG learned unknown agent(s) of Alder, John Doe Defendants 1 through 10, represented to Adroine Roach, an ASG customer in Itta Bena, MS, that Alder would pay off Mr. Roach's contract with ASG as part of his agreement to enter a new contract with Alder. Alder never paid off Mr. Roach's existing contract, leaving him with two alarm system bills and damaging his relationship with ASG.

29. On or about February 3, 2025, ASG learned that Dan Leighton, an agent of Alder, represented to Robert Perkins, an ASG customer in Leland, MS, that Alder bought out ASG to induce Mr. Perkins to sign a new contract with Alder, damaging his relationship with ASG.

30. On or about September 12, 2024, ASG learned that unknown agent(s) of Alder, John Doe Defendants 1 through 10, represented to Debra Thomas, an ASG customer in Clarksdale, MS, that Alder would pay off Ms. Thomas's contract with ASG as part of her agreement to enter a new contract with Alder. Alder never paid off Ms. Thomas's existing contract, leaving him with two alarm system bills and damaging his relationship with ASG.

31.     On or about February 21, 2025, ASG learned that unknown agent(s) of Alder, John Doe Defendants 1 through 10, represented to Earnest Todd, an ASG customer in Cleveland, MS, that they were affiliated with ASG to induce Mr. Todd into signing a new contract with Alder, damaging his relationship with ASG.

32.     On or about June 26, 2023, unknown agent(s) of Alder, John Doe Defendants 1 through 10, represented to Aundra Palmer, an ASG customer in Indianola, MS, that they were affiliated with ASG in order to procure her signature on a new alarm contract. Ms. Palmer, as a result, was left with two separate alarm system contracts, one with ASG and one with Alder, damaging her relationship with ASG.

33.     On or about August 30, 2023, unknown agent(s) of Alder, John Doe Defendants 1 through 10, represented to Linda Moore, an ASG customer in Moorehead, MS that Alder would pay off Ms. Moore's contract with ASG as part of her agreement to enter a new contract with Alder. Alder never paid off Ms. Moore's existing contract, leaving her with two alarm system bills and damaging her relationship with ASG.

34.     On or about October 15, 2024, ASG learned that unknown agent(s) of Alder, John Doe Defendants 1 through 10, represented to Mareen Gulley, an ASG customer in Moorehead, MS, that Alder would pay off her balance with ASG to induce her to sign a service contract with Alder. Alder never made that payment and left Ms. Gulley with two alarm service bills, damaging her relationship with ASG.

35.     On or about September 27, 2024, ASG learned that unknown agent(s) of Alder, John Doe Defendants 1 through 10, represented to Bertha Shaffer, an ASG customer in Sunflower, MS, that Alder would pay off her balance with ASG to induce her to sign a service contract with

Alder. Alder never made that payment and left Ms. Shaffer with two alarm service bills, damaging her relationship with ASG.

36.     On or about May 22, 2024, unknown agent(s) of Alder, John Doe Defendants 1 through 10, represented to Emma Porter, an ASG customer in Sardis, MS, that Alder bought out ASG to induce Ms. Porter to sign a new contract with Alder, damaging her relationship with ASG.

37.     On or about September 8, 2022, unknown agent(s) of Alder, John Doe Defendants 1 through 10, misrepresented to Lonnie Kidd, an ASG customer in Ruleville, MS, that his ASG alarm system was hooked up through his phone line and could be disabled from outside his house to induce him into entering a contract with Alder and damaging his relationship with ASG. This was patently false, as Mr. Kidd's alarm system was monitored via cellular technology.

38.     On or about September 7, 2023, unknown agent(s) of Alder, John Doe Defendants 1 through 10, misrepresented to Calvin Stephens, an ASG customer in Lexington, MS, that they were affiliated with ASG and his system required an upgrade. Mr. Stephens, relying on this misrepresentation, had a neighbor let the agents in his home. The agents changed all alarm equipment in Mr. Stephens' home, without even procuring a signature from Mr. Stephens, damaging his relationship with ASG.

## CAUSES OF ACTION

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

39.     As described above, Counter-Defendants made or caused to be made many false statements concerning ASG that damaged ASG's relationships with its customers, employees, and third-party financing companies. Counter-Defendants' actions were (1) intentional and willful; (2) calculated to cause damage to ASG in its lawful business; (3) done with the unlawful purpose of

causing damage and loss without right or justifiable cause on the part of ASG; and (4) caused actual damage and loss to ASG.

## SLANDER

40.     The verbal statements made by Counter-Defendants were (1) false and defamatory concerning ASG; (2) constitute an unprivileged communication to a third party; (3) were made with at least negligence on the part of Counter-Defendants; and (4) resulted in harm to the business reputation of ASG, as well as causing substantial decrease in business and loss of profits to ASG.

41.     As a direct result of, and immediately following, the numerous untrue, false and malicious statements made verbally by Counter-Defendants, ASG suffered substantial lost profits and loss of sales revenue. The statements made by Counter-Defendants were made with actual knowledge of their falsity, and thus Counter-Defendants acted with reckless disregard for the truth.

42.     As a result of Counter-Defendants' defamatory, and   slanderous statements, actions, and publications against ASG, ASG has suffered damages for which Counter-Defendants are liable.

## INTENTIONAL WRONGDOING/GROSS NEGLIGENCE

43.     Counter-Defendants' actions were intentional, reckless and grossly negligent in nature, and were designed to cause harm to Defendants or were made with actual knowledge of their falsity, or at a minimum with reckless disregard for the truth.

44.     As a result of Counter-Defendants' intentional, grossly negligent acts, Defendants have suffered actual damages for which Counter-Defendants are liable.

## NEGLIGENCE

45.     The statements made by Counter-Defendants about Defendant's business were negligent in nature, as such statements made by Counter-Defendants would not have been made by a reasonably prudent person acting under the same or similar circumstances as Counter-Defendants.

46.     As a result of Counter-defendants' negligent acts, Defendants have suffered actual damages for which Counter-defendants are liable.

## VIOLATION OF LANHAM ACT

47.     The Lanham Act, 15 U.S.C.A., Section 1125(a), states:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising, or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

48.     A prevailing plaintiff under the Lanham Act claims is entitled to Counter-Defendants' profits, damages sustained by the plaintiff, costs of the action, and reasonable attorney's fees.

49.     Further, a Court may enter judgment for treble damages that result from a Lanham Act Violation

50.     Counter-Defendants have violated the Lanham Act because its representatives, including but not limited to Adam Schanz, made false statements to denigrate the quality of

Defendant's goods and services, or to falsely claim that Defendants are no longer in business, among other things, to its existing customers.

51. In addition, with certain ASG customers, Alder representatives, made false statements to misrepresent they were representatives of ASG.

52. As a result of Counter-Defendant's actions in violation of the Lanham Act, ASG suffered damages.

53. Due to Counter-Defendant's actions in violation of the Lanham Act which caused damages to ASG, ASG is entitled to recover Alder's profits, three times ASG's damages, and costs and reasonable attorneys' fees.

### CIVIL CONSPIRACY

54. As referenced in Paragraph 8, Adam Schanz is directly involved in Alder's business operations including employee and customer recruiting constituting an implicit agreement to harm ASG's business.

55. Adam Schanz, Alder, and John Doe Defendants 1 through 10 violated the Lanham Act and all related causes of actions in furtherance of its conspiracy to harm ASG's business.

56. Neither Adam Schanz, Alder, nor John Doe Defendants 1 through 10 has any right to commit the Lanham Act violations or any other related causes of action.

57. Each action described herein concerning the Lanham Act and related causes of action constitute overt acts in furtherance of the conspiracy.

58. As a result of this scheme, ASG suffered damages.

**ABUSE OF PROCESS**

59. As referenced in Paragraph 22, Counter-Defendants demanded ASG sign a non-compete agreement.

60. The court system's purpose is to provide remedy for damages.

61. For each of the specific allegations regarding Alder customers contained in Alder's complaint, ASG either has no record of ever providing service to the named individuals or has recordings of quality assurance calls which are regularly made following any ASG system installation. These quality assurance calls directly contradict the allegations made by Alder in its complaint. Alder's sham claims are a misuse of the civil process to force ASG to sign a non-compete, which is not the intended purpose of the civil process.

62. ASG has suffered economic harm because of this misuse of the civil process.

**PUNTIVE DAMAGES**

63. The actions of the Counter-Defendants Alder or Adam Schanz, either alone or jointly, described herein were done with malice, with reckless disregard for the rights of ASG, with gross negligence, and were willful and wanton in nature, thereby justifying an award of punitive damages against Counter-Defendant, jointly and severally, in an amount sufficient to punish each and to deter similar conduct in the future.

**INJUNCTIVE RELIEF**

64. For the reasons stated above and to prevent irreparable harm and further damages, ASG requests entry of a preliminary and permanent injunction, pursuant to F.R.C.P. 65, ordering Counter-Defendants Alder and Adam Schanz, and any of their agents, to refrain and desist from making the false and defamatory statements and conducting the slam activities described above or any other actions or activities aimed at harming ASG's business.

65. Absent an injunction, ASG will continue to suffer irreparable injury, Counter-Defendants' actions present a significant and omnipresent liability to ASG's business activities and relations.

66. The threatened injury to ASG outweighs the harm an injunction might do to Counter-Defendants if an injunction is granted. There is no harm to Counter-Defendants because an injunction would not prevent or hinder Counter-Defendants in their normal, regular business activities.

67. Entry of an injunction would serve the public interest because Counter-Defendants' actions are intentionally, recklessly and maliciously harming ASG, another business and competitor of Alder.

68. There is no adequate remedy at law because Counter-Defendants' actions are causing immediate and irreparable harm to ASG.

WHEREFORE, PREMISES CONSIDERED, ASG and Thomas Brady respectfully request that the Court:

A. Enter a preliminary and permanent injunction ordering Alder, Adam Schanz, and any of their agents to immediately cease and desist from engaging in making false and defamatory statements about ASG's business activities and viability;

B. Set a speedy hearing date for the preliminary injunction in accordance with F.R.C.P. 65(a);

C. Award ASG compensatory damages in an amount to be determined by the jury due to Counter-Defendants' improper actions;

D. Award ASG compensatory, treble damages, as well as all costs, expenses, attorneys' fees and all other damages allowed by law for Counter-Defendants' violations of the Lanham Act;

E.     Award ASG punitive damages; and

F.     Award ASG costs, expenses, attorney fees, pre and post-judgment interest, and any other relief this Court deems appropriate.

**RESPECTFULLY SUBMITTED,** this the 23rd day of June, 2025.

**THE ALARM COMPANY, LLC d/b/a ALARM SERVICES GROUP, LLC and THOMAS BRADY**

By:    /s/ *Phillip M. LeMere*
DORIS T. BOBADILLA (#99869)
PHILLIP M. LEMERE (#106312)
**GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, A PLC**
2510 14th Street, Suite 1010
Gulfport, MS  39501
Telephone:  228-214-4250
Facsimile:   228-214-9650
Email: dbobadilla@gallowaylawfirm.com
Email: plemere@gallowaylawfirm.com
*Attorneys for ASG Defendants*

And

DAN W. WEBB MSB# 7051
**WEBB SANDERS & WILLIAMS, PLLC**
P.O. Box 496
Tupelo, MS 38802-0496
Telephone: 662-844-2137
Email: dwebb@webbsanders.com
*Attorneys for ASG Defendants*

And

TAYLOR H. WEBB MSB# 104180
**TOLLISON & WEBB, P.A.**
103 N. Lamar Blvd., Ste 201
Oxford, MS 38655
Telephone: 662-234-7070
Fax: 662-234-7095
Email: taylor@tollisonlaw.com
*Attorneys for ASG Defendants*

**CERTIFICATE OF SERVICE**

I, Phillip M. LeMere, one of the attorneys for Defendants, The Alarm Company, LLC d/b/a Alarm Services Group, LLC and Thomas Brady, do hereby certify that I have this date served the above and foregoing upon all counsel of record and interested persons using the Court's ECF filing system.

So certified, this 23rd day of June, 2025.

/s/ Phillip M. LeMere
Phillip M. LeMere (#106312)